IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SARENS USA, INC.,<br><br>             Plaintiff,<br><br>vs.<br><br>AMY LOWERY,<br><br>             Defendant. | Lead Case No.<br>CV 20–47–M–DWM<br><br>Member Case No.<br>CV 20–60–M–DWM<br><br>ORDER |

This administrative review case stems from claims Amy Lowery ("Lowery") brought against her former employer, Sarens USA, Inc. ("Sarens") for hostile work environment, discriminatory discharge, and retaliation. A Hearing Officer at the Office of Administration Hearings sustained Lowery's hostile work environment claim and awarded $50,000 in emotional distress damages. The parties cross-appealed to the Montana Human Rights Commission, which affirmed the Hearing Officer's decision. Following a hearing on January 7, 2021, this Court affirmed the agency decision and remanded the issue of attorney fees. (Doc. 28.) The clerk entered a $50,000 judgment in Lowery's favor. (Doc. 29.)

Subsequently, Lowery requested that the judgment be amended to award interest and attorney fees. (Doc. 30.) The Court granted Lowery's request in part, agreeing to determine a fee award in the first instance. (Doc. 36.) Lowery

1

therefore requests $76,410 in attorney fees and $6,271.38 in costs. (Doc. 32.) Sarens opposes the motion. (Doc. 41.) The parties also provided further briefing on the question of interest. (*See id.* at 15–16; Doc. 40.) Ultimately, the January 8 judgment will be amended to include both pre- and post-judgment interest; a fee award of $61,725.00; and a cost award of $4,301.34.

On March 2, 2021, Sarens filed a Notice of Appeal, appealing the January 8 Opinion, Order, and Judgment and February 2 Order. (Doc. 42.) Nevertheless, "[i]f a party files a notice of appeal after the court announced or enters a judgment—but before it disposes of [a motion to alter or amend a judgment]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(A), (B)(i). Thus, this Court retains jurisdiction to address the motions.

## ANALYSIS

### I.   Interest (Doc. 30)

In her original motion to alter or amend, Lowery sought post-judgment interest from September 20, 2019 (the date of the Hearing Officer's decision) to the present. (*See* Doc. 30 at 2; Doc. 31 at 4–5.) Following the Court's request for additional briefing, however, Lowery now seeks prejudgment interest from October 21, 2019 (the date her right to recover vested following Hearing Officer's decision) through January 8, 2021 (the date of this Court's judgment) and post-

judgment interest from January 9 until the judgment is satisfied. (Docs. 31, 40.) Sarens, on the other hand, concedes that Lowery is entitled to post-judgment interest from February 13, 2020 (the date of the Commission's decision) onward but insists that she is not entitled to prejudgment interest. (Doc. 41 at 15–17.)

Thus, there are three contenders for the operative "judgment": (1) the Hearing Officer's September 20, 2019 decision (which vested October 21, 2019), (Doc. 33-2); (2) the Commission's February 13, 2020 final agency decision, (Doc. 33-5); and (3) this Court's January 8, 2021 judgment, (Doc. 29). Though the answer is far from clear, this Court's January 8 judgment makes the most sense. Both the state and federal post-judgment interest statutes specifically refer to interest following a court decision. *See* Mont. Code Ann. § 25–9–204 ("The clerk shall include in the judgment entered up by the clerk any interest on the verdict or decision of the court, from the time it was rendered or made."); 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case in a district court."). Moreover, "[i]n diversity cases such as this one, the court looks to state law to determine the rate of prejudgment interest while federal law determines the rate of post judgment interest." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013). It would be impossible for the federal rate to kick in any earlier than this Court's judgment because the

3

case was not yet in federal court and might never have been. Thus, the relevant "judgment" for interest purposes was entered on January 8.

Because post-judgment interest is awarded as a matter of right under 28 U.S.C. § 1961 after that point, the question then is whether Lowery is entitled to prejudgment interest. She is. Sarens first argues that Lowery is not entitled to such interest because it was not pled. However, Lowery's March 10, 2020 petition requests the full award amount "with interest." (*See* CV 20–60–M–DWM, Doc. 1-2 at 7.) Sarens next argues that such interest is not appropriate under § 27–1–210, Mont. Code Ann., because the amount was disputed. But prejudgment interest here is governed by § 27–1–211, Mont. Code Ann., which provides:

> [e]ach person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover that is vested in the person upon a particular day is entitled also to recover interest on the damages from that day except during the time that the debtor is prevented by law or by the act of the creditor from paying the debt.

Accordingly, "[t]here are three prerequisites to recovery under this statute. First, an underlying monetary obligation must exist. Second, the amount of recovery must be capable of being made certain. Third, the right to recover must vest on a particular day." *Edwards v. Cascade Cty.*, 212 P.3d 289, 296 (Mont. 2009). Thus, "the accrual start date for prejudgment interest necessarily varies depending on the particular facts and circumstances of each case." *Warrington v. Great Falls Clinic, LLP*, 467 P.3d 567, 570 (Mont. 2020).

4

All three prerequisites are met here as of October 21, 2019. First, on September 20, 2019, the Hearing Officer issued her decision finding in favor of Lowery. Second, the Hearing Officer awarded $50,000 in emotional distress, a fixed sum. Third, the Hearing Officer gave Sarens thirty (30) days to pay the award. (*See* Doc. 33-2 at 42.) Thus, Lowery is entitled to prejudgment interest from October 21, 2019 to January 8, 2021 at the Montana rate.

Based on the foregoing, the January 8 judgment shall be amended to award: (1) prejudgment interest from October 21, 2019 to January 8, 2021 at the Montana rate, Mont. Code Ann. § 25–9–205(1); and (2) post-judgment interest from January 9, 2021 until paid at the federal rate, 28 U.S.C. § 1961.

## II.     Attorney Fees and Costs (Doc. 32)

Lowery seeks $76,410.00 in fees and $6,271.38 in costs for 254.7 hours of service at $300 per hour. (Doc. 34 at ¶¶ 26–27.) Sarens argues that this request "is excessive and should be significantly reduced." (Doc. 41 at 5.) Fees are awarded in the amount of $61,725.00 and costs in the amount of $4,301.34.

### A.     Timeliness

Sarens first argues that Lowery's fee request should be rejected as untimely under § 49–2–505(8), Mont. Code Ann., which provides that "an action for attorneys' fees must comply with the Montana Rules of Civil Procedure." Pursuant to those Rules, a request for attorneys' fees must be made by motion and,

*inter alia*, "be filed no later than 14 days after the entry of judgment." Mont. R. Civ. P. 54(d)(2)(i). Sarens argues that because Lowery failed to request attorney fees within fourteen days of either the Hearing Officer decision or the Commission's final agency decision, her request is untimely. However, as discussed above, the operative judgment is this Court's January 8, 2021 judgment. (*See* Doc. 29.) Even though Rule 54(a) defines "judgment" as "any order from which an appeal lies," which could include the agency decisions, Rule 54(d)(2)'s requirement that attorney fees be pursued through a "motion" does not line up with § 49–2–505(8)'s provision that a prevailing party can bring an "action for attorney fees" in the district court. Ultimately, because Lowery filed her motion for fees eight days after this Court's judgment, (*see* Doc. 32) her request is timely.

**B.     Fee Award**

"In a diversity action the question of attorney's fees is governed by state law." *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979). Montana recognizes two methods of calculating reasonable fees: (1) "the lodestar method, which involves multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work" and (2) "the percentage recovery method, which authorizes fees to be paid from a percentage of a common fund or a contingency fee agreement." *Gendron*, 461 P.3d at 119 (internal quotation marks omitted). Although both parties argue the current motion under

6

the lodestar method, it appears that Lowery's counsel was under a pseudo-contingency agreement: "Our fee agreement provided that I be paid either 40% of the total recovery after a contested case hearing, or my hourly rate of $250 per hour, whichever is greater." (Doc. 34 at ¶ 24.) Forty percent of Lowery's $50,000 award is $20,000. Under the lodestar method, on the other hand, counsel seeks $76,410.00 for 254.7 hours of service at $300 per hour. (*Id.* at ¶¶ 26–27.)

Thus, the first question is whether counsel should be limited to the $20,000 contingency amount. "Ordinarily, when lawyers undertake a representation on a contingency basis, they bargain for a percentage of recovery . . . [that] accounts for the risk of nonrecovery." *Buckman v. Mont. Deaconess Hosp.*, 776 P.2d 1210, 1212 (Mont. 1989) (quoting *Wight v. Hughes Livestock, Inc.*, 664 P.3d 303, 309–10 (Mont. 1983)). But here, the only risk to counsel under the agreement was that his client may not prevail. Should she prevail, counsel was entitled to reasonable fees by statute, determined through the lodestar or cost recovery analysis discussed above.[1] In turn, those fees would be paid by the opposing party, not the client. Knowing this, it is a bit strange that counsel demanded the "greater" of a contingency or hourly fee arrangement. This is especially so because even if

---

[1] This can be compared to a contingency agreement in cases that do not invoke a fee-shifting statute, such as product liability. A contingency agreement in that case has at least two inherent risks; first the risk of no recovery and second the risk of limited recovery.

Lowery's recovery was significant, the amount fixed by a contingency fee agreement is not binding on the court in awarding fees, as the court retains discretion in considering a reasonable fee award. *Gendron*, 461 P.3d at 120. And, the factors relevant to a percentage of recovery calculation are similar to those reviewed under the lodestar method. *Id.* (citing *Stimac v. State*, 812 P.2d 1246, 1249 (Mont. 1991)). Thus, the Court will apply the lodestar calculation, but will also consider counsel's shift of the risk and fixed fee amount. *See id.* at 120–21 (emphasizing that the court has discretion to adopt a calculation method that reflects reasonable award in a particular case).

    **1.**    **Reasonable Time**

Under the lodestar method, seven factors—known as the *Plath* factors—guide the determination of the number of hours reasonably expended:

    (1) the amount and character of the services rendered;
    (2) the labor, time and trouble involved;
    (3) the character and importance of the litigation in which the services were rendered;
    (4) the amount of money or the value of the property to be affected;
    (5) the professional skill and experience called for;
    (6) the attorneys' character and standing in their profession; and
    (7) the results secured by the services of the attorneys.

*Gendron*, 461 P.3d at 120; *see also Plath v. Schonrock*, 64 P.3d 984, 992 (Mont. 2003). An award must be based on competent evidence and supported by an adequate rationale. *Gendron*, 461 P.3d at 121. Here, Lowery submitted an

affidavit in support of her fee request, (Doc. 34), and an hourly breakdown of counsel's services, (Doc. 34-2). Lowery requests payment for 254.7 hours:

| Timeframe | Hours by Year | | | | Totals |
|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 2021 | |
| Prior to Contested Hearing | 79.8 | 55.1 | | | **134.9** |
| Between Contested Hearing and Hearing Officer Decision | | 27.4 | | | **27.4** |
| Between Hearing Officer Decision and Commission Decision | | 19.7 | 14.1 | | **33.8** |
| Between Commission Decision and this Court's Judgment | | | 41.4 | 5.4 | **46.8** |
| Post-Judgment | | | | 11.8 | **11.8** |
| Totals | **79.8** | **102.2** | **55.5** | **17.2** | **254.7** |

### a. *Plath* Factors

Counsel successfully litigated at least one of Lowery's claims through a contested case hearing, a full review by the Commission, and another full review by this Court. He took multiple depositions and extensively briefed both the legal and factual basis of the case multiple times. Although not factually complex, the case involved numerous witness reports and statements, some of which were conflicting or inconsistent. Marshalling the record for the contested hearing and litigating this case therefore took skill and time. Employment discrimination is also a nuanced area of the law. Thus, with minor adjustment, counsel spent a reasonable amount of time on this case.

### b. Review of Specific Entries

Sarens first argues that counsel's hour entries are vague and non-descriptive, specifically challenging generic entries such as "phone call" or "review email." However, attorneys are merely required to identify the "general subject matter of [their] time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) (cautioning that, in determining fees, courts "need not and indeed should not, become green-eyeshade accountants . . . [as] the essential goal . . . is to do rough justice, not to achieve auditing perfection"). While Sarens is correct that many of counsel's entries are broad, that does not mean they cannot be evaluated in the context. For example, numerous unidentified phone calls billed at 0.1 to 0.6 hours makes sense in the context of discovery. (*See* Doc. 34-2 at 2.) No specific entries are rejected on these grounds.

      c.     **Fees for Fees**

Lowery also seeks to recover fees for the work expended on drafting and filing the present motion for attorney fees and costs. Generally, "the prevailing party is not entitled to fees-for-fees." *Swapinski v. Lincoln Cty.*, 357 P.3d 329, 333 (Mont. 2015). Although there is an exception to this rule if attorney fees are provided for by statute, *id.*, the award is still discretionary under § 49–2–505(8). Thus, even if recoverable, Lowery's request for fees for fees, totaling 7.8 hours, (*see* Doc. 34-2 at 11), is rejected. This does not mean, however, that Lowery is precluded from seeking fees associated with an appeal, if successful.

### d. Successful vs. Unsuccessful Claims

Sarens further argues that Lowery's fee award should be limited to services related to Lowery's hostile work environment claim, which was the only claim on which she prevailed. Montana follows a two-step approach to determine whether a fee award should be adjusted to reflect success on some claims but not others:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Laudert v. Richland Cty. Sheriff's Dep't*, 38 P.3d 790, 794 (Mont. 2001) (quoting *Hensley*, 461 U.S. at 434) (*Laudert II*). Thus, the first inquiry is "whether the fees were incurred for claims that were distinct or interrelated." *Id.* "Distinctly different claims for relief based on different facts and legal theories which are unsuccessful should be excluded from a reasonable fee calculation." *Id.* But in cases "involv[ing] a common core of facts or [those] based on related legal theories are not as easily separable." *Id.* "In these situations, the district court should move to the second step and focus on the overall significance of the relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

Here, Sarens focuses on the first inquiry, arguing that Lowery succeeded only on her claim for hostile work environment, which is both legally and factually distinct from her claims for retaliation and discriminatory discharge. While Sarens is correct that Lowery's hostile work environment claim centered on Watson's

11

conduct while her other two claims focused more on the company's conduct, that does not obviate the common set of facts underlying her claims.[2] As outlined in this Court's January 8 Opinion, (Doc. 28 at 1–10), her claims are interrelated.

Under the second consideration, "the result is what matters" and "[e]ven if a plaintiff does not prevail on every claim raised, if the plaintiff achieves significant success, all hours reasonably expended on litigation should be included with the attorney fee award." *Laudert II*, 38 P.3d at 794 (internal quotation marks and alteration omitted). While a reduction may be justified if a plaintiff has achieved only "limited success," success is not only measured in money damages. *Id.* To the contrary, the amount of damages awarded to the plaintiff "is only one of many facts that a court should consider in calculating an award of attorney's fees." *Id.* (internal quotation marks omitted). In a human rights case such as this, courts "examine success not only in terms of the direct benefit to the plaintiff . . . but also whether the claimant's actions further effectuated the purpose for which the statute was enacted." *Id.* at 795.

Here, as a result of Lowery's claim, Sarens was required to consult with an attorney "to develop and implement policies for the identification, investigation

---

[2] Sarens attempts to argue that Lowery's claims regarding discharge and pretext were based on an affidavit that was "proven untruthful" and were so unsupported that they were never going to succeed. (*See* Doc. 41 at 11.) Notably, however, had either this Court or the Commission been the decider in the first instance, Lowery may have succeeded on additional claims.

12

and resolution of complaints of discrimination that includes training for its board members, managers, and supervisors to prevent and timely remedy sexual discrimination on the job." (Doc. 33-2 at 42.) Moreover, these policies must provide that "employees will receive information on how to report complaints of discrimination" and "must be approved by the Montana Human Rights Bureau." (*Id.*) As a result, this case benefited all of Sarens' employees in Montana and sent a message to other employers regarding workplace misconduct. Thus, even though Lowery was awarded only $50,000 on one claim, she achieved a level of success necessary to support a full fee award. *See id.* For the same reason the Court rejects Sarens' request that Lowery's fee award be reduced by 75% "based on Lowery's vague billing." (Doc. 41 at 13.)

### e. Supplemental Affidavit (Doc. 43-1)

After briefing her motion for fees and further addressing interest, Lowery submitted an affidavit requesting payment for an additional 19.6 hours of work. That request is rejected. As discussed above, she is not entitled to fees-for-fees, which is the bulk of the 19.6 hours. Moreover, to the extent that work can be attributed to briefing the interest issue, counsel should have been cognizant of the interest statutes and their application when he pled such relief. Put differently, the additional time counsel spent educating himself on this area of law is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

### 2. Reasonable Hourly Rate

Under the lodestar method, "the reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Abbey/Land, LLC v. Glacier Constr. Ptnr's, LLC*, 433 P.3d 1230, 1249 (Mont. 2019). Here, in his pseudo-contingency agreement with the client, counsel agreed to an hourly rate of $250. (*See* Doc. 34 at ¶ 24.) He now seeks, however, an hourly rate of $300 since his rate changed during this litigation. (*Id.* at ¶¶ 24–25.) He argues that $300 is appropriate based on his 26-year experience with these types of cases when compared to rates awarded to other attorneys with less experience. (*Id.* at ¶ 25.) However, counsel's agreement to a rate of $250 reflects his acceptance of that market rate for this type of case. Once again, counsel "shifted" the risk by assuring the highest fee award possible. He did so by explicitly requiring his rate of $250. That rate is therefore reasonable. (*See* Doc. 34-2 at 13–14) (holding attorneys in *Bachmeier* to rate outlined in retainer agreement).) This does not foreclose Lowery, however, from seeking a higher rate for counsel's work on appeal.

### 3. Conclusion

Based on a total hour calculation of 246.9 and an hourly rate of $250, Lowery is awarded $61,725.00 in attorney fees. As the lodestar amount, this amount is presumptively reasonable. *Laudert II*, 38 P.3d at 793; *see also Fox*, 563 U.S. at 838 (merely requiring "rough justice"). While a court may adjust a lodestar

14

amount using a "multiplier" based on factors not considered in the initial calculation, *see Blum v. Stenson*, 465 U.S. 886, 898–901 (1984), no such adjustment is warranted here. The amount of fees does not have to be proportionate to the damages awarded to the charging party. *See Mont. St. Univ.-N. v. Bachmeier*, ___ P.3d ___, 2021 WL 360830, at *15–16 (Mont. Feb. 3, 2021) (affirming damages award of $100,000 and attorney fees and cost award of $360,072.65). And there is no indication that Lowery frivolously extended the case. Sarens offered only $20,000 to settle the case following the Hearing Officer's award of $50,000. (*See* Doc. 41-1.) And, Sarens chose to appeal both agency decisions and maintain its patently incorrect position that Watson's conduct did not create a hostile work environment. Sarens has also filed a notice of appeal here. (*See* Doc. 42.) Thus, Sarens has chosen to pursue this case through the full appellate process, contributing to Lowery's mounting fees.

### C. Cost Award

Finally, Sarens argues that Lowery is seeking costs not recoverable under Montana law, specifically costs associated with travel and those related to her unsuccessful petition for review. In response, Lowery argues that her costs are not limited by Montana's cost statute. Neither party, however, addresses the applicable law. In diversity actions such as this, an award of costs is generally a procedural matter governed by federal law. *Stender v. Archstone-Smith Operating*

*Tr.*, 958 F.3d 938, 945–48 (10th Cir. 2020) (concluding that Colorado's general laws for assessing costs did not apply in diversity case). But "[t]here are limited circumstances in which costs become a *substantive* matter, namely a federal court sitting in diversity will award costs in accordance with federal law unless a state provision allows for the awarding of costs as part of a substantive, compensatory damages scheme." *Gardner v. Fed. Express Corp.*, 2016 WL 1559686, at *2 (N.D. Cal. Apr. 18, 2016) (cleaned up). That is not the case here.

In Montana, costs are governed by Montana Code Annotated §§ 49–2–505(8) and 25–10–201 and Montana Rule of Civil Procedure 54(d)(1), which all simply allow the Court to award costs. As was the case in *Stender*, "[n]othing about the [Montana] statutes indicates a judgment about the scope of state-created rights or remedies." 958 F.3d at 947. These statutes apply in every case. Accordingly, federal law controls. A party in federal court may recover costs for:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.[3] This list is exclusive and does not include costs related to attorney travel. *Stender*, 958 F.3d at 946. Costs associated with counsel's travel to Houston and mileage are therefore rejected ($1,374.79). Sarens further argues that Lowery should not be able to recover her filing fees associated with CV 20–60–M–DWM, Lowery's petition for review, on the ground that Lowery did not "prevail" on that petition. That argument is persuasive. *See Lyddon v. Geothermal Props., Inc.*, 996 F.2d 212, 214 (9th Cir. 1993) (refusing to award costs of unsuccessful cross-appeal). Because Lowery's appeal was unsuccessful, she is not permitted to recover filing fees associated with that case ($595.25).

Accordingly, Lowery is awarded costs in the amount of $4,301.34.

## CONCLUSION

Based on the foregoing, Lowery's motions to amend the judgment (Doc. 30) and her motion for fees (Doc. 32) are GRANTED. The Court's January 8, 2021 Judgment, (Doc. 29), is amended to award:

(1) Prejudgment interest from October 21, 2019 to January 8, 2021 at the Montana rate pursuant to Mont. Code Ann. § 25–9–205(1);

---

[3] When requesting costs in federal court, a prevailing party generally files an "application" with the clerk. *See* Form AO 133. However, § 1920 gives either "[a] judge or the clerk of any court of the United States" the authority to tax costs.

(2)   Post-judgment interest from January 9, 2021 until paid at the federal rate pursuant to 28 U.S.C. § 1961;

(3)   Attorney fees in the amount of $61,725.00; and

(4)   Costs in the amount of $4,301.34.

IT IS FURTHER ORDERED that the Clerk is directed to enter an Amended Judgment consistent with the January 8 Judgment as modified by this Order.

DATED this 12th day of March, 2021.

13:21 P.M.

Donald W. Molloy, District Judge
United States District Court